All right, the last case being argued today is Kinney v. Public Consulting Group et al. Kinney v. Public Consulting Group et al. Mr. Raisner, I see you've reserved two minutes for rebuttal. You can come whenever you're ready. Thank you. Good morning, Your Honors, and may it please the Court. Isaac Raisner on behalf of the appellant, Joseph Kinney. During the pandemic, PCG hired Mr. Kinney to work in its call center supporting the initiative. Its purpose was to help contain the spread of COVID-19. Four months later, after a 600% spike in COVID cases, PCG laid off some of the initiative's staff, including Mr. Kinney. The WARN Act does not permit downsizing to take place when no notice is given, which was the case here. So you're suggesting that the WARN Act, if there's a temporary project, that a company, in order to qualify the exemption, has to terminate all of the employees at the very last day of the project, that they can't, over a several-week period, wind down the project? Is that what the WARN Act requires? In this case, yes. Mr. Kinney would have had— Why in this case? In this case, you have a classic temporary job. You have a contact tracer that they tell him, you're going to be here for two months. He stays the two months. They don't terminate him early. Then they get a call from—they let him stay on a little bit of extra time. And then they get a call from the department, New York State Department of Health, that says that the contact tracing is going to conclude by the end of April, and that you should begin scaling back your workforce for purposes of ending the initiative by April 30th. So they get that call. They send out an alert and tell their temporary employees, we're going to start phasing out because we're closing down. And then, in fact, that's what happens. So the only way you could win on this case, and you can correct me if I'm wrong, is if our holding would be that in order to qualify for this exemption, everybody, all the temporary employees, have to be terminated on the very last day of the project. And my suggestion to you is, if that's what we're required to do, that would be an extraordinary holding because there's a lot of temporary projects where you phase out people. Undoubtedly, Your Honor. And if the plan for the project from the outset is to have a wind-down period and certain employees are told, you are part of Group A, you're here for the whole project— Why does it have to be at the start of the project? If it's a temporary job and towards the end of the project it's descending, and you determine that you don't need all the people to the very last day, why do you have to have that all figured out at the beginning of the project? Because one of the—the exemption has two requirements, one relating to the time of termination, but the other relating to the understanding at the outset. And if I may read the exemption, it's when the layoff is the result of a completion of a particular project or undertaking and the infected employees were hired with the understanding that their employment was limited to the duration of the facility or the project or the undertaking. That language doesn't say you are guaranteed employment for the entire duration of the project or undertaking, does it? That language— I mean, that language says Warren Act doesn't apply, but it doesn't limit what an employer can do. Well, at the very least it clarifies what the first clause of the exemption— In other words, if it is indeed a project limited to the duration— if it is employment limited to the duration of the facility or the project or the undertaking, there's no obligation that you are employed for whatever that time is. Not an obligation that you are employed that long, but merely a guarantee that if you are not employed that long, you will get Warren notice because the employer will no longer qualify for this exemption. Suppose the project lasts, you know, 59 days. Notice still required? If the project lasted 59 days and they were hired for the purpose— and they began—the employee began on the first day of that project, that employee would require notice, but it would not be 60 days of notice because that employee—Warren notice maxes out at half of your tenure in the job. So an employee who has only been employed for 59 days would be— Let me give you a different hypothetical. Suppose I'm building a building. I hire 100 people, temporary to help build a building. I tell them September 30th we're going to have this building done, all right? It takes longer than September 30th. So in their offer letter, it said September 30th. They actually get to stay a little bit longer than September 30th. And then I start phasing people out. I don't need plumbers anymore. I've done that. And the project ends shortly thereafter. You're saying, no, you have to keep all those 100 employees until the very last nail in that building goes in. The critical difference there, Your Honor, is that that is a— aside from giving the date in this hypothetical— and the Department of Labor Act says actually you don't have to have a firm date in order to qualify for the exemption. In Your Honor's hypothetical, in addition to the date that is being given to these construction workers, the employer is actually telling them what the defined undertaking is, which is construction work toward a goal. It says here you will be temporarily employed as a contact tracer. So your client knows he's going to be a contact tracer. And then it tells him the expected duration of this assignment is until December 2020-21. I don't know what more they could have told him, that it's a temporary assignment, this is what you're going to be doing, and this is where we expect it to end. What could they have told him at that point? Nothing. You're completely right, Your Honor. Because this project was inherently not the kind of project that the Department of Labor states qualifies for the exemption. Why should the Warren Act apply? Why does it make sense that the Warren Act protection should apply in a situation where you are told you're being hired temporarily and the expected duration is two months? The reason is because Warren has only one purpose, which is to let the employee know if their termination is coming in the next 60 days. They are entitled to know. But he knows that right from the start. He knows it right from the start because he's told the expected duration is until December 2021, two months later. Less than two months later. The offer letter stated it could be December 21, but that may change. And, indeed, within days it did change. The contract was extended to March. There was no reliable date that Mr. Kinney had other than what he was hearing around the water cooler about the successive extensions to the contract. Now, to be told that your employment is temporary is only to be told this job will end when we say it ends. That employee is in the exact same position as an at-will employee who can be terminated tomorrow, who can be terminated five years from now. And the Warren Act is – But those – a typical at-will employee is not told we're going to employ you for 59 days. Right? And so the expectations are different because even though you're an at-will employee, you go in expecting to work for a while, not for a duration of less than two months. He was not given that as a firm date, and it said that – but this date may change. And within – at the time that he was hired, that was the end of the contract as it stood, December 31st. Within a week of his being hired, the contract with HRI was extended to March 31st. And so the understanding around, you know, for a remote workforce, the virtual water cooler was, well, then we're all here until the project ends because, in addition to the offer letter, he had the handbook which told him when the project concludes, the employees will be terminated. PCG is the one that set that bright line that said that the employees would be terminated at the end of the project. To be clear – Your time is up, Mr. Rasmussen. You have two minutes for rebuttal. Thanks. We'll hear from Mr. Berker. Good morning and may it please the Court. This lawsuit is Mr. Kinney's attempt to take advantage of the uncertainties surrounding what will hopefully be a once-in-a-lifetime pandemic. Judge Ramos saw this case for what it was. He understood that it would have been redundant to issue a warrant notice to an employee like Mr. Kinney, who was told at the time of his hire that he's only expected to be employed for two months to temporarily work on a project to assist the Department of Health's efforts in containing COVID. But he worked for more than two months. Correct. But he was told immediately upon hire that his work – If that's an excuse, then any employer could work around the Warren Act by simply telling employees that when there were temporary employees that were hired, you won't be here longer than 59 days. But there's more to it than that. They gave him an end date and they told him exactly what the project was that he was working on. And on top of that, he was working on a COVID – on a project that would assist the Department of Health in – But it was extended and extended. And I don't understand why these are – it seems to me these are paradigms of what the Warren Act is entitled to protect against. You can do this, but if you're going to – if you're going to extend the project, if you're going to keep the people on, and then you decide to lay them off, you've got to give them the notice. Because the purpose of the Warren Act was effectuated here from the time of his hire. Any reasonable person that took this job with the warnings that he was given at the time of hire and the particular job that he was working in would have known this is not – this is not what my future career path is. Of course he would have known it's temporary, but the point is here, what was the duration of it? And the project was extended and then it was extended again, and it went well beyond the 60-day expectation. And isn't the Warren Act designed to protect employees from abrupt layoffs under these circumstances? So two things. For one, I don't think the fact that they were able to preserve his employment for two extra months should be used as a hook to make the company liable or the company's liable. I think Judge Parker's point is that it was earlier than that. Even by the time he was hired, there had already been multiple extensions. In other words, that the argument – You could have protected yourself by giving him notice. So how would have noticed – I don't even know how notice would have worked out in this case. So they hired him with the intent to terminate him basically within 60 days or about 60 days out. So would they have had to give him notice before they even hired him? It turned out to be fanciful. No layoffs in 60 days. You get another period of time, 30 days or whatever it was. Because ultimately, as this court said in the recent Roberts v. Jenkin case, the purpose of the Warren Act is to provide workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and if necessary, to enter skilled training or a training that would allow them to successfully compete in the job market. And so why wasn't he entitled to that? Well, Mr. Kinney had that from the time of his hire with all the information that was available to him, that was provided to him by the employer, as well as just knowing what this specific job – You're saying the offer letter gave him that warning. Because the offer letter – you're saying, I think, that the offer letter gave him that warning because it said your employment is going to end in 60 days. Your employment is going to end in 60 days and you're being hired to work on this specific project, which is contact tracing, COVID, assisting the Department of Health with contact tracing, which anyone would know at that time is not something that is going to be some sort of long-term arrangement. Well, I think at the time no one knew what was going to happen. No one knew what was going to happen, but that's exactly the point. Judge Ramos kind of made that exact point in his opinion when he said, Here, where an offer letter repeatedly and unequivocally states the employment is temporary, pursuant to only an initiative, amidst an evolving pandemic response, that does not create – that does not create a reliant interest in indefinite employment of the sort that the Federal and New York Warrant Act would legislate to provide notice for in the event of mass termination. In fact, opposite Kinney's argument, the ever-evolving nature of the pandemic and the New York State Department of Health's response would engender less certainty for employee about indefinite employment. But you would agree that if there was a situation – I understand you're saying this is different, but if there was a situation where an employer knew there were going to be multiple extensions of whatever the project was, just telling the person this is temporary, to Judge Parker's point, to just try to get around the Warrant Act, I'll just tell them it's temporary, even though I know the likelihood is we're going to extend this for multiple times, that would be problematic, right? I think that would be problematic, but that's not what this was. What about if you don't know how long it's going to last, but you tell them it's temporary? So that would fall within the whole idea that there are some instances when you don't know when the end point will be. But if you tell them that you're working on this particular project, and when this project ends, that's when your employment is going to end, that fits within the exception. So my hypothetical construction project, if the construction project, which very often they don't hit the date, and it could be extended months or even longer, but that wouldn't then suddenly convert that person, because there were delays in the construction project, into a Warrant Act employee. Correct. They're hired to work on this, to build this house or whatever the case may be. Right. And the fact that it took a little longer to finish it doesn't all of a sudden make them not be temporary. Yeah, I think the fundamental point is, I think their argument is that this was such, the nature of the pandemic and contact tracing, I think he said it at one point, it's just inherently you can't call someone temporary because nobody knows what's going to happen. So that's the argument. That's the argument, but I think it's kind of the opposite. The excerpt that I read from Judge Ramos' opinion, I agree with that, that yes, you don't know how long it's going to be, but you know that it's not going to be permanent, and you know that there's a fair likelihood that it's going to end at any time, and you need to be looking for, have your eyes open for a new job now, because you don't know when it's going to end. In fact, what happened here wasn't that they kept him on for a year, a much longer period. In fact, they ended up terminating him pretty closely to what they had estimated because New York State said this is over. Correct. That's correct. I don't have anything else to add. I'm happy to answer any other questions that you might have. All right. Thank you. Thank you. Mr. Reisner, you have two minutes in rebuttal. Go ahead. I'd like to just read from the Department of Labor's preamble, which says that the department generally agrees the project must have begun with an announced and ascertainable duration and terminal point. What is important is that it be clear at the outset that upon the completion of some defined undertaking, the project will be complete, which means that the project needs to be a defined undertaking, which means the employees need to know what is going to happen that will lead to the completion. If an employee knows that, then a project has built-in predictability, and then it makes sense that Warren would have an exception for that kind of work. It says before that says the duration and terminal point of many temporary projects may not be capable of being precisely defined at the beginning of the project due to the vagaries of other conditions and other factors. Absolutely. Isn't that exactly this type of situation that because of the nature of pandemic, we know there's not going to be contact tracers forever, but we don't know exactly when that's going to end. So that's what they told the employee, right? They gave an estimate of when they thought it would end. It turned out their estimate was pretty good. So I don't know why you think the preamble helps you. I'd like to go back to Your Honor's example with the construction project, which is absolutely right. There could be weather delays in a construction project, which means the workers will take off for a week, and so when they thought they were going to complete the building, it turns out they will complete the building a week later. But the point is that the construction project is a defined undertaking because the employees, whether it happens at the beginning of the month or the end of the month, the employees will see when the final touches are being put on the building, and so the employees will inherently know that they are nearing the end regardless of when that is happening. The same cannot be said for this project because it was not a defined undertaking in the sense that nobody knew, not only when it was going to end, but how it was going to end. Taking out that predictability, which is what the WARN Act is about, would make the project not eligible for the exemption. But from the outset, it would be – it wasn't likely that he had any idea of a long-term relationship because he was told he was being hired temporarily for 60 days. Undoubtedly true. But WARN does not protect an interest in long-term employment. WARN protects an interest in knowing whether or not your employment is going to end in the next 60 days. Setting the bar at indefinite employment, like the district court did below, that is a straw man because indefinite employment is not a concept under federal employment law. Contracts for indefinite employment are unenforceable. WARN looks at only the last period, either 60 or 90 days before your termination, and asks, does the employee know that they are going to be terminated within this range? If not, they need to get a WARN notice. The exemption can easily be read in a way where when the conditions are right, you do not need a WARN notice in order to let the employee know that their employment is about to end. If they have a defined undertaking and they are terminated at its completion, the project has the predictability it needs. Just one final question. If I give a WARN notice, say 60 days, am I obligated to lay off the employee at 60 days? Can I say, well, unforeseen stuff is coming up, I'm going to keep you a little longer? Absolutely. And then would you have to give another 60-day warning at that point? If you decide, if the employer decided to terminate them, I would think so. So it becomes 120 days at a minimum, the employment. The period, there would have to be compensation for 120 days. Unless if something unforeseeable came up, which the employer originally thought, maybe I'll keep this person indefinitely, and then something comes up that says that they need to terminate them, the employer will be able to invoke the unforeseeable business circumstances defense. And so that notice period would not necessarily need to be 60 days. All right. Thank you. Thank you both for a reserved decision and have a good day. That completes the business of the court. With thanks to Ms. Molina, I would ask that court be adjourned.